**MITSUBISHI MATERIALS CORP., Nihon Cement Co., Ltd., Osaka Cement Co., Ltd., and Onoda Cement Co., Ltd., Plaintiffs,**

v.

**The UNITED STATES, and U.S. International Trade Commission, Defendants,**

and

**The Ad Hoc Committee of Southern California Producers of Gray Portland Cement, Defendant–Intervenor.**

Slip. Op. 96–44.
Court No. 91–06–00426.

United States Court of International Trade.

Feb. 29, 1996.

Graham & James, Yoshihiro Saito, Washington, DC, for plaintiffs Mitsubishi Materials Corp., Nihon Cement Co., Ltd., and Osaka Cement Co., Ltd.

Akin, Gump, Strauss, Hauer & Feld, L.L.P., Patrick F.J. Macrory, Spencer S. Griffith, Washington, DC, for plaintiff Onoda Cement Co., Ltd.

Lyn M. Schlitt, General Counsel; James A. Toupin, Assistant General Counsel, United States International Trade Commission, Washington, DC, Judith M. Czako, for defendant.

Kilpatrick & Cody, Joseph W. Dorn, Michael P. Mabile, Washington, DC, for defendant-intervenor.

### OPINION

GOLDBERG, Judge:

Plaintiffs, Mitsubishi Materials Corp., Nihon Cement Co., Ltd., Osaka Cement Co., Ltd., and Onoda Cement Co., Ltd. commenced this action under section 516A of the Tariff Act of 1930, challenging the final affirmative threat of injury finding and the final affirmative injury determination made by the U.S. International Trade Commission ("Commission") in *Grey Portland Cement and Cement Clinker from Japan*, USITC Pub. No. 2376, Inv. No. 731–TA–461 (Final) (Apr.

1991) ("Original Determination"). By order dated April 27, 1993, the Court remanded this action with instructions that the Commission reevaluate its material injury determination in accordance with the Court's opinion. *Mitsubishi Materials Corp. v. United States*, 17 CIT 301, 820 F.Supp. 608 (1993) ("*Mitsubishi Materials I* ").

The Commission issued its remand determination in June 1993. *Grey Portland Cement and Cement Clinker from Japan*, USITC Pub. No. 2657, Inv. No. 731–TA–461 (Views on Remand) (June 1993) ("Remand Results"). Three new commissioners had been appointed to the Commission who participated in the remand. On remand, two of the new commissioners, Commissioners Watson and Nuzum, found threat of material injury; Commissioner Newquist affirmed his original finding of material injury; and newly appointed Commissioner Crawford found no material injury and no threat of injury.

In the Commission's Original Determination, Commissioner Brunsdale found no injury and no threat of injury. Her findings were not challenged by any party. Commissioner Rohr found threat of material injury. Since Commissioner Rohr's finding of threat of material injury has already been affirmed by the Court, *Mitsubishi Materials I*, 17 CIT at 320–23, 820 F.Supp. at 625–27, a three commissioner majority now has determined that a threat of material injury exists.[1]

This opinion addresses plaintiffs' objections to Commissioners Watson and Nuzum's threat of injury determination. As the Court affirms their joint determination, the Court does not need to address plaintiffs' challenges to Commissioner Newquist's remand determination. The Court exercises its jurisdiction pursuant to 28 U.S.C. § 1581(c) (1988) and affirms the Commission's finding of threat of material injury.

### DISCUSSION

The underlying facts of this action are detailed in the Court's original opinion. *Mit-*

subishi Materials I, 17 CIT at 301–03, 820 F.Supp. at 611–13.

Three commissioners have now made an affirmative determination of threat of material injury. The Court affirmed Commissioner Rohr's finding of threat of injury in its original opinion. *Mitsubishi Materials I*, 17 CIT at 320–23, 820 F.Supp. at 625–27. Commissioners Watson and Nuzum have adopted the same position as Commissioner Rohr on remand.

When the commissioners are evenly divided as to whether a determination should be affirmative or negative, the Commission is deemed to have made an affirmative determination. 19 U.S.C. § 1677(11) (1988). In the present case, the Commission has made an affirmative determination of threat of material injury, and because its determination is supported by substantial evidence on the record in accordance with 19 U.S.C. § 1516a(b)(1)(B) (1988), plaintiffs' various challenges pertaining to the Commission's findings of material injury are rendered moot and need not be addressed. Plaintiffs' objections to Commissioners Watson and Nuzum's findings of threat of material injury are discussed below.

### A. Standard of Review

A Commission determination in an antidumping investigation shall be upheld unless the Court determines that it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Commission determinations are presumed to be correct, and the burden is on the party challenging the Commission's determination to demonstrate otherwise. 28 U.S.C. § 2639(a)(1) (1988).

■ The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*

---

[1] Former Commissioner Lodwick participated in the Original Determination, finding material injury along with Commissioner Newquist, but did not participate in the Remand Results. Because he was replaced before he could cure his original determination in accordance with the Court's remand instructions, his vote is not counted towards the six commissioner panel that decided the case.

*Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938) (citations omitted). The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026–27, 16 L.Ed.2d 131 (1966) (citations omitted).

### B. *Plaintiffs' Objections*

### 1. *Remand Instructions*

■ Plaintiffs argue that Commissioners Watson and Nuzum violated the Court's remand instructions in *Mitsubishi Materials I* both by failing to evaluate costs when assessing price trends, and by failing to consider plant-specific data. Addressing these objections together, the Court finds that the remand instructions to which plaintiffs refer govern only the Commission's material injury determination. These Commissioners were not members of the Commission at the time of the original determination, and properly reviewed the case on remand *de novo*. *Trent Tube Div., Crucible Materials Corp. v. Avesta Sandvik Tube AB*, —— Fed.Cir. (T) ——, 975 F.2d 807, 811, 815 (1992). They made a threat of injury determination, and therefore, the remand instructions which pertained only to the Commission's material injury finding do not apply to their determination. Commissioners Watson and Nuzum therefore have not violated the Court's remand instructions. The Court will review their findings on their own merit, without regard to the Court's remand instructions.

### 2. *Causation*

■ Plaintiffs object that the findings of Commissioners Watson and Nuzum that lower prices resulted from dumped Japanese cement are not supported by substantial evidence. Plaintiffs argue that the lower prices in the Southern California cement market were caused by domestic producers passing on their reduced costs. Plaintiffs object that the Commissioners do not provide evidence that disproves their theory of causation.

Plaintiffs invite the Court to substitute its own expertise for the Commission's in evaluating the various theories of causation. Specifically, plaintiffs argue that their theory is more consistent with increases in demand during part of the study period, and that acceptance of the Commissioners' theory assumes that domestic producers agreed not to pass on reductions in cost to consumers. The Court declines to substitute its own expertise for that of the Commission in evaluating causation. Instead, the Court takes its guidance from the standard of review governing this case. Under the substantial evidence standard, the reviewing court may not "even as to matters not requiring expertise ... displace the [agency's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951).

■ Congress directed the Commission not to weigh causes of price suppression and depression in antidumping cases, but instead to affirmatively find injury, or threat of injury, where it determines that dumped imports minimally contribute to industry conditions. *British Steel Corp. v. United States*, 8 CIT 86, 96, 593 F.Supp. 405, 413 (1984); *see also* H.R.Rep. No. 317, 96th Cong., 1st Sess. 47 (1979). Under this standard, if the Commission can demonstrate that dumped imports have contributed to lower domestic prices, then the Commission can properly find a threat of material injury, regardless of the contribution lower costs may have made to lower domestic prices.

■ Commissioners Watson and Nuzum found that domestic producers had an incentive to reduce prices because imports from abroad were entering the market at reduced prices. *Remand Results* at 12–13. The Court holds that this finding is supported by substantial evidence: Japanese imports were being sold at lower prices, domestic market share was threatened, and domestic producers therefore had an incentive to lower domestic prices in order to maintain capacity utilization and profits. *Id.*

Because the Commissioners have supported their finding of causation with substantial evidence by showing how dumped imports caused or contributed to price suppression and depression in the Southern California cement market, this Court affirms their finding of causation.

### 3. *Loss of Market Share*

■ Plaintiffs also argue that Commissioners Watson and Nuzum's finding that loss of market share contributed to local producers' vulnerability is unsupported by substantial evidence. Plaintiffs contend that because domestic producers operated at or near full capacity during the early part of the investigation, they were not harmed. Therefore, in plaintiffs' opinion, the loss of market share could not have rendered domestic producers vulnerable. The Court does not find this argument persuasive.

The Commissioners interpreted the same data that plaintiffs rely upon, but they found that domestic producers were vulnerable to future imports because they had been deprived of the opportunity to expand capacity due to loss of market share in the Southern California market. *Remand Results* at 13. Domestic producers were able to maintain high capacity utilization partly because they accepted less profitable contracts to ship cement to other markets outside the region. *Id.* at 7. According to the Commissioners, loss of market share during the early part of the period of investigation deprived domestic producers of the ability to invest in facilities and to increase their capacity, and harmed their ability to survive downturns in the local market. *Id.* at 11–13. When consumption increased in the local market, it was satisfied by Japanese imports. *Id.* at 11. The Commissioners reasonably took this as proof that lower-priced imports contributed to rendering the domestic industry vulnerable. Because the Court finds that the Commissioners' determination regarding loss of market share is supported by substantial evidence, the Court affirms this aspect of the Remand Results.

### 4. *Adjusted Cost Figures*

■ Plaintiffs object that Commissioners Watson and Nuzum wrongly rejected their adjusted cost figures. Plaintiffs allege that the cost figures should have been adjusted downward, to plaintiffs' benefit, because of "anomalous" increases in costs in 1990 arising from antidumping litigation. This objection lacks merit.

■ The Commission weighs evidence as the trier of fact in these cases, and has authority to reject or discount data that it determines is unreliable. *See Wieland Werke, AG v. United States*, 13 CIT 561, 576, 718 F.Supp. 50, 61–2 (1989); *Iwatsu Elec. Co. v. United States*, 15 CIT 44, 56, 758 F.Supp. 1506, 1517 (1991).

The Commissioners opted to rely upon actual data, as opposed to plaintiffs' adjusted figures. *Remand Results* at 9 n. 42. The Court's review of the unadjusted cost data shows that the unadjusted unit cost figure for 1990 is close to the average of unit operating costs for the previous four years. *Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record on Remand* ("*Plaintiffs' Motion*"), Attachment 11. Thus, the 1990 unadjusted cost figure does not unacceptably skew the data. Because the Commissioners reasonably exercised their authority to reject the adjusted data in favor of unadjusted cost data, the Court affirms their refusal to rely on this data.

### 5. *Real Price Data*

■ Plaintiffs also object that Commissioners Watson and Nuzum wrongly compared nominal costs to nominal prices, as opposed to utilizing plaintiffs' "real price" data. Plaintiffs argue that this error undermines the Commissioners' vulnerability finding and their finding of threat of injury. This objection lacks merit.

The Commissioners appropriately compared nominal costs and nominal prices based on unadjusted data in order to derive profit margins and to track price suppression during the period of investigation. The Commissioners rejected the real price data for various reasons, including that it was based upon adjusted data. *Remand Results* at 9 n. 42. As discussed above, the Commission correctly exercised its authority to reject

adjusted data, and by extension, any real price data based upon it. In addition, the Commissioners examined plaintiffs' real price data and found that it supported their own position that the domestic industry suffered price depression and suppression. *Id.* Therefore, plaintiffs' objection is also moot.

### 6. *Percentage of Production Analysis and Company–Specific Analysis*

 Plaintiffs object that Commissioners Watson and Nuzum's findings of vulnerability and threat are not supported by substantial evidence because the Commissioners failed to perform a "percentage of production" analysis, and they improperly relied on aggregate data as opposed to company-specific data. Because these objections are closely related, the Court considers them together. The Court finds that both lack merit.

These objections boil down to plaintiffs' discomfort with the data which the Commission found convincing. As discussed above, the Commission has authority to weigh the evidence as the trier of fact. *See Wieland Werke, supra.*

At the outset, the Court observes that the percentage of production analysis, which Commissioner Rohr used, is not required in order to satisfy the Commission's evidentiary burden of finding threat of injury based on substantial evidence. Nevertheless, the Court finds that contrary to plaintiffs' assertions, Commissioners Watson and Nuzum did consider percentage of production data, and thereby considered company-specific data. They do not repeat Commissioner Rohr's percentage of production analysis, but Commissioner Nuzum does refer to it as "very useful" and clearly considered it in reaching her joint conclusion with Commissioner Watson as to vulnerability. *Remand Results* at 14 n. 57 (Percentage of production analyses "reveal a downward trend in the most recent period ... which indicates some serious vulnerability to the potential effects of LTFV imports." (quoting *Original Determination* at 61) (alteration in original)). The Court therefore finds that Commissioners Watson and Nuzum did consider percentage of production data, and, in doing so, also consid-

ered company specific data. Since the Commissioners did not rely upon aggregate data alone, plaintiffs' objections lack foundation.

### 7. *All or Almost All Standard*

 Plaintiffs object that Commissioners Watson and Nuzum failed to satisfy the "all or almost all" statutory requirement in making their determination of threat of injury. Pursuant to statute, the Commission must show that all or almost all of the production within the market is materially injured, or threatened by material injury, by reason of dumped imports. 19 U.S.C. § 1677(4)(C) (1988). Plaintiffs contend that the Commissioners must consider company-specific data to properly apply this standard. According to plaintiffs, the Commissioners must find that some qualifying percentage of production is injured, or in this case, threatened with injury.

As discussed above, the Commissioners considered percentage of production data, and therefore considered company-specific data in arriving at their finding of threat of injury. This Court does not need to determine, however, whether the Commissioners' analysis in this regard was sufficient to satisfy the all or almost standard because their use of aggregate data in this case was appropriate. The factors supporting imminent threat to all or almost all of the industry are based on industry conditions common to each and every domestic producer in the Southern California market. *Remand Results* at 9 n. 41. All producers faced the same operating and market conditions, including declining consumption during parts of the study period, lower-priced competition from dumped imports, and increased unit costs in 1990 for all producers based on unadjusted figures. *Plaintiffs' Motion,* attachment 11. The Commission found that there was an imminent threat of injury because the industry would not be able to maintain profit margins as it had in the past. Aggressive cost-cutting had already taken place, and the domestic industry would be subject to continued underselling by Japanese imports, given unused Japanese capacity. *Remand Results* at 18.

The Court finds that Commissioners Watson and Nuzum's finding that all or almost all

of the domestic industry was imminently threatened by dumped imports is supported by substantial evidence. The Commissioners' findings with regard to the all or almost all standard are hereby affirmed.

8. *Other Objections*

Plaintiffs object to Commissioners Watson and Nuzum's vulnerability finding on the grounds that they failed to analyze declining prices in relation to cost trends. The Commissioners did consider nominal costs and concluded that decreasing costs during most of the investigation period enabled domestic producers to operate profitably. *Remand Results* at 19. Plaintiffs' objection therefore lacks merit; cost trends were taken into consideration by the Commissioners.

Plaintiffs also object that Commissioners Watson and Nuzum implicitly assume that declines in unit costs from 1986 to 1989 were the result of spreading fixed costs over larger production volumes, and that increases in unit costs in 1990 were the result of spreading fixed costs over a smaller volume of production. Based upon a review of the record, the Court finds no support for this objection. No such assumption was made; the Commission merely found that profit margins were maintained because reductions in costs offset reductions in price. *Id.* at 15.

Finally, plaintiffs object to the Commissioners' threat determination on the grounds that prices were rising in 1990 and therefore were not suppressed. This objection lacks merit. As discussed above, the Commissioners gave many reasons for their finding threat of injury. No one factor is conclusive. Here, the Commissioners found that an imminent threat existed because the industry remained vulnerable to future dumping, and the cost structure of domestic industry was such that it may not be able to maintain profit margins as it had in the past. *Id.*

## CONCLUSION

A majority of the Commission made an affirmative determination of threat of material injury which the Court finds is supported by substantial evidence and otherwise in accordance with law. Therefore, the Commission's determination of threat of material injury is hereby affirmed, and the case is dismissed. A separate judgment and order thereon will be entered accordingly.

## *ORDER*

This case came before the Court on plaintiffs' motion for judgment on the agency record, and defendant and defendant-intervenor's opposition thereto. The Court remanded the case for further consideration by the U.S. International Trade Commission ("Commission") in accordance with the Court's judgment in *Mitsubishi Materials Corp. v. United States,* 17 CIT 301, 820 F.Supp. 608 (1993). As the Commission has issued a determination in compliance with the Court's decision, it is hereby

**ORDERED** that the Commission's finding of threat of material injury in *Grey Portland Cement and Cement Clinker from Japan: Views on Remand in Investigation No. 731–TA–461*, USITC Pub. No. 2657 (Final) (Remand) (June 1993) is affirmed; and it is further

**ORDERED** that plaintiffs' various challenges pertaining to the Commission's findings of material injury, having been rendered moot, need not be addressed. Judgment is entered for defendant, and this action is hereby dismissed.